IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

Tara T. Peace,
    Plaintiff,

Vs.

Ohio Department of Rehabilitation
& Corrections,
Ms. Annette  Chambers Smith
4545 Fisher Road
Columbus, Ohio 43215

Mr. Gary L. Mohr (Former Director)

        -and-

Mr. Brian Wiltrup
Chief Burea of Classification
current contact information
unknown to Plaintiff at this time

        -and-

Management Training Corporation
500 North Market Place Dr. Suite 100
Centerville, UT 84014

        -and-

North Central Correctional Complex
Warden, Neil Turner
R.I.B. Chairman, Prichard, "John"
Unit Manager Ms. S. Curry
Case Manager Ms. Melinda Taylor
Deputy Warden at N.C.C.C. "Jane Doe", et al

Civil Action No.: 1 : 20 C V 2 1 5

District Judge____ **I DLOTT**

: Magistrate Judge  **M.J, LITKOVITZ**

RECEIVED

MAR 16 2020

RICHARD W. NAGEL
Clerk of Court
CINCINNATI, OHIO

COMPLAINT

## I. JURISDICTION AND VENUE

1). This is a civil action authorized by 42 U.S.C. §1983 to redress the deprivation under color of State Law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. §1331 and 1343(a)(3). Plaintiff seeks declatory relief pursuant to 28 U.S.C. §§2201 and 2202. Plaintiff Federal tort claims act are authorized by 28 U.S.C. §1346 the court has Supplemental jurisdiction over plaintiffs state law claim under 28 U.S.C. §1367. Plaintiffs claims for injunctive relief are authorized by 28 U.S.C. §§2283 and 2284, and Rule 65 of the Federal Rules of Civil Procedures.

2). The United States District Court, Southern Ohio District. Joseph P. Kinnerary U.S. Courthouse; Room 260, 85 Marconi Bolevard, Columbus, Ohio is an appropriate venue under U.S.C. §1391(L)(2) because it is where the events giving rise to this claim occured.

## II. PLAINTIFFS

3). Plaintiff, legally known as Tara Temperance Peace, is and was at all times mentioned herein a prisoner of the State of Ohio in the custody of the Ohio Department of Corrections. She is currently confined at Pickaway Correctional Institution, Orient, Ohio in Pickaway County, Ohio.

## III. DEFENDANTS

4). A) Defendants, Gary C. Mohr/Annette Chambers-Smith is/was the director of Ohio Department of Corrections. He/She is responsible legally for the over all operations of the department and each institution under O.D.R.C. jurisdiction including North Central Correctional Complex, which is contracted to Management Training Corporation at 500 North Market Place Dr. Suite #100, Centerville, UT 84014.

(2).

B) Defendant Mr. Neil Turner is the Superintendent or Warden at North Central Correctional Complex. He is responsible legally for the operation at stated facility and the staff members that work under him. Mr. Turner is further more responsible for the welfare of all inmates in the same facility.

C) Defendant John/Jane Doe is the Deputy Warden of Operations whom is responsible for the day to day operations of the staff that are employed at N.C.C.C. including but not limited to their training, activities that are within the scope of operations within the same prison. John or Jane Doe is also responsible for the welfare and treatment of the inmates at this stated facility.

D) Defendant "John" Prichard is/was the rules infraction board (R.I.B.) chairman and is legally responsible for any and all disciplinary actions metted or taking place at N.C.C.C. He is responsible to know, follow, or heed any and all disciplinary actions that occur in the rules infraction board purview at North Central Correctional Complex.

E) Defendant Ms. S. Curry, Unit Manager at N.C.C.C. which at the time of offenses was located in a block called "Marion A/B." She is/was responsible for the day to day care and safety of all inmates located in that block, included but not limited to, housing, fair treatment, lawful treatment and unbiased treatment of all inmates with the block designated under her care supervised by her supervisors in and out of the same prison.

F) Defendant "Jane Doe", was/is the Case Manager of North Central Correctional Complex located in block Marion A/B whom worked under the direct supervision of defendant Ms. S. Curry the Unit Manager of "Marion A/B". She is responsible for day to day activities, and all areas where documentation, security reviews or transfer may be needed or occur.

(3).

G) Defendant Ms. Melinda Taylor is or was Case Manager at the time of the offenses did or may have completed, signed and submitted security in question. Ms. Taylor could be the same person as defendant "F" but is unknown at this time. Ms. Taylor share all the same responsibilities as defendant "F" in this capacity.

H) Defendant Brian Wittrup is/was the Chief of Classification for Ohio Department of Corrections. He is legally responsible for any and all persons working under him, the proper training and filing of documentation of the same group of people that do reclassifications, transfers, level increases or decreases and the proper filing of any and all documentation that is filed by his staff. This includes but not limited to, his staff's proper training and activities such as tranfers, request to be transfer, level increase or decrease to remove, increase a prisoner's freedom as raising a inmates security status is designed to do just that.

Each defendant is sued individually and in his/her official compacity. At all times mentioned in this Complaint, held rank of a position within Ohio Department of Corrections and any or all Contractors under the same rules, regulations, policy of O.D.R.C.

## III. FACTS

5). On February 12, 2019, I was transferred from S.C.C.C. in Lancaster, Ohio a level 2 prison to North Central Correctional Complex also a level 2 prison, in Marion, Ohio.

6). Upon arrival my property was/taken from me and conduct reports written, even after I explained I followed the directions at S.C.C.C. to packing my property especially after I was told to wrap my T.V. in my blanket & pillow to protect my screen.

(4).

7).     After I was assigned my bunk space, where I was to reside I was already hearing complaints by my bunkmate about living in the same space as a transgender.

8).     When I met for the first time U.M. S. Curry she made it clear by body language, verbilized comments, she made clear she would not respect my legal name (my name has been legally changed since 2015), nor request to not refer to me using male pronouns while addressing me.

9). U.M. Curry disrespected me, called me Sir every chance she got stressing the word Sir or Mr. while addressing me told me my name is Todd not Tara and gave me a direct order to remove paint from my toe-nails while rolling her eyes at me.

10).    I met with S. Curry, Deputy Warden "Jane Doe" a P.R.E.A. representative in person in reference to my needs as a transgender and victim status, I needed my bras, shower alone and request not to refer to me in male pronouns which is policy for transgenders in Ohio.

11). The woman D.W.O. & S. Curry made it perfectly clear what they thought of me being at this prison, with out responses exaggerated attempts to use my proper pronouns body language & eye contact.

12).    I went to U.M. Curry's office to ask to be moved some where else because my bunkmate at this time was stealing from me, calling me fag, freak and a whole lot more among other verbal attacks.

13).    I also requested through unit staff get John Doe to be relocated to an honor dorm which while at S.C.C.C. I was residing at a dorm for 40 and over, (I am over 40), or prefered living area.

14). Due to Conduct Report written for assalting an inamte, at Richland Correctional Institution which got me transfered from there as well. The inmate tripped over my legs while I was trying to get out of his way and to

(5).

protect my property that he almost fell on.

15).    Richland, and several oother institutions made my life difficult because I recieve hormone therapy, and I do need certain special treatment to protect myself. I fought for hormones through greivance procedures and Richland among other institutions made know that they didn't care that Central Office approved my medical treatment, i.e. my bras, and needs for a transgender.

16).    Richland Correctional Institution also made me bunk with a guy that was disliked by unit staff whom picked on me, made sexually advances towards me whom got drunk or high on a regular basis and became combative.

17).    I requested a bunk move there and was told he either "go to the hole", check-in or deal with it. The Unit Manager purposely put us to-gether in order to get the result that occured. I was kicked out of another prison and he was injured.

18).    I was placed at the front of the block where it is noisy, high traffic and caused alot of undue stress and mental anguish. This is a common practice among all Ohio prisons to make a person who needs protection regrett needing anything extra. Ohio prisons punish P.R.E.A. protected individuals, and in turn victimize us worst than actual abusers.

19).    I was raped in Trumbell Corr. Inst. a level 3 prison by my cellie and his friends. I am designated as a victim or potential victim what has been done to me by Ohio prisons including Maliciously and Purposely raising my security status against written policy and procedures is by no means only my experiences. This same action is taken against other transgenders that need protection or need/recieve or request treatment as in gender disphoria.

20).    The action of purposely placing a transgenders or at risk P.R.E.A. inmates beds up front where there is alot of traffic issues, noise

(6).

and just being harassed by other inmates and staff are, as in known to me by conversations, eye witnessing and personal experience a state wide issue.

21). The difference in me with others is I am vocal about my mis-treatment, my rights and my needs. Many others jusy accept it as part of being in prison as a transgender.

22). While I was incarcerated at N.C.C.I., the individual I got into a fight with on several occassions harassed picked on and violated me by telling others my birth name, (this is because it's written in **Bold** print on the J-pay Kiosk after I requested several times the company to change it), + using hateful names like "Shim", "Fag with tits" ect, ect.

23). At some point in the midst of inmate Fords harassment compaign Ford told others I am a snitch and that the U.M. (Ms. Curry) did not want me in her block because I would file grievances and tell on others illegal activities.

24). While in the restroom I personally witnessed inmate Ford telling others in the restroom that "Ms. Curry will not bring in anything else until "that shim", (refering to me) is out the block." Inmate Ford stated that Ms. Curry is refusing to bring in anymore "Strips" refering to Saboxon and what **ever** else Ms. Curry was supplying other inmates with in the block.

25). I was **punched** from behind in the same restroom and told to check in.

26). In the private prisons, you don't know who you can trust to do there jobs, who is dirty or even who is doing what for whom.

27). I got into a fight with inmate Ford due to his lies, harassment and issues he and Ms. Curry had with me being in the block.

28). I felt I had no choice or option, I tried to leave the block Ms. Curry told me she had no where to put me.

(7).

29).     On March 10th, 2019 I walked back to inmate Fords bed area
after yet another argument that morning, my anxienty and stress or fear from
what Ford and Ms. Curry were doing and had done. I entered the cube where
Mr. Fords  bed area and begun to trade punches with Mr. Ford until I felt I
had, by prison's unwritten rules proven myself to others that watched the
fight that I would not allow others to disrespect me.

30).     I walked away from the fight, no weapons were used on my
behalf in this fight.

31).     According to the Conduct Report that was written by U.M.
Ms. Curry "Ford at that retaliates by fighting back" clearly indicates both
inmates were fighting and it wasn't an assault as Ms. S. Curry charged me
with.

32).     I was not even aware that Ford was even charged with a fight
(rule 19) until well after I was transfered, nor was I aware Ford was charged
and found guilty well before I was even heard by R.I.B. See disposition sheet,
R.I.B. Conduct Reports.

33).     Inmate Ford according to his disposition sheet, Inmate is
in  college full time, with no serious reports within the last 12 months.
Inmate also involved with inmate programming 15 days I.P.U. recommended
suspended, to begin on 3-11-19 to end 9-7-19. Recommend local seperation from
inmate Peace 371-943." See disposition dated 3-13-19.

34).     U.M. S. Curry & R.I.B. Chairman did nothing to punish Inmate
Ford for the fight he was found guilty, as a matter of fact he was protected
by the staff because the inmate worked for U.M. S. Curry and Ford did what
U.M. S. Curry wanted to get rid of me.

35).     R.I.B. Chairman having found found inmate Ford guilty of a
rule 19 fighting ticket, knew that the assault charge could not stand or be

within the parameters of policy and procedures.

36).     Since inmate Ford was charged and convicted of a rule 19 violation, I then could not be charged for an assault by law, rules nor policy. There was no weapons used by myself nor charged in the conduct report.

37).     R.I.B. Chairman, worked with U.M. Curry to over charge me and increase my level and     the primary reason I was assaulted three time at N.E.O.C.C. level 3 where I was not suppose to be my security review points did not even reach the level of a increase but for R.I.B. Chairman & U.M. S. Curry primarrily what I went through at N.E.O.C.C. level 3 would not have occured.

38).     My transfer security review was approved by case manager Melinda Taylor, was approved by Case Manager Melinda Taylor, was approved by Warden Neil Turner and implemented by the burea of classification thats no less than three O.D.R.C. employees or contractors that allowed the R.I.B. conviction that was clearly against policy snd law to be upheld in order to transfer me from level 2 to level 3.

39).     While at N.E.O.C.C. I was attacked by a Aryan Brother A.B. on 4-13-19, by a inmate Henry #690-707, because he said I was hitting on him in a sexual manner.

40).     The real reason his buddy wanted the cell I was assigned to, inmate  Henry was going home in less then 24 hours andI have a long term well known issue with A.B.'s or White Supremist period.

41).     My mouth was split open I was cut on the inside of my mouth and scared on my lower lip & under my lower lip. I was attacked from benind, and did not fight back at all. Which constitutes an Assault.

42).     I was attacked again by inmate David Burns #574-505, because I was not interested in being romantically involved with her and told her I

(9).

don't even like black transgenders I am already married to a white transgender. She got mad and punched me in the neck causing bruising pain and swollen area.

43). I was again attacked on night before I was transfered back to level 2 by an inmate who was also romantically interested in me. The protection she recieved being my cellie and emotional ties shes had for me she was not happy I was leaving to return to level 2, I refused to even speak to her because she openly threatened me on or around 10-11-19, I got into an argument. Walked away to my block, where this inmate no longer lived with me. Closed and locked my cell door and a correctional officer through C.C.A. opened the cell door and allowed access into the block where she threw two punches and I ducked with no return punches and got away from her and behing the officer who had responded to the incident.

44). This inmate went into my cell and smashed my T.V. on the ground which was replaced before I transfered.

45). While at N.E.O.C.C. level 3 I was grabbed in the hallway leading to recreation touching my breasts, buttocks and hips by several inmates. I did report the incident to staff and inmates that did it threatened to have me hurt if I named or identified who was responsible for these acts.

46). On several nights I cried myself to sleep because I was scared of that place, the people that ran it and the inmates housed at N.E.O.C.C.

47). I was constantly being stared at by mostly black men who were sexually interested in me. I got too many to count requests for sexual favors, and to be with them as a couple. I refused and stood my ground each time. I was scared of being in the hallways where I could be grabbed on again.

48). I had Correctional Staff tell me to pick one so "it" would all be over.

49). My Solace and person whom protected me through-out these ordeals was my then Unit Manager Ms. Milhoan who kept me in the fight to over

turn this R.I.B. conviction and return to level 2 where I belonged.

50). My mental health liazion who listened to me and understood what I was living through.

51). I was transfered out of N.E.O.C.C. level 3 back to level 2 on 10-9-19, and did not believe the transfer was taking place until I left the N.E.O.C.C. grounds headed to level 2 again.

## IV. EXHAUSTION OF LEGAL REMEDIES

Plaintiff Tara Temperance Peace #371-943, used prisoner grievance procedures available at North Central Correctional Complex (N.C.C.C.) and created another by sending the information and explanation letter to several people within the prisons and works for O.D.R.C. which will be included in this complaint as well as names addresses that recieved such information to include staff at N.E.O.C.C.

## ODRC Policy 5120-9-31 (B)

"The inmate griswance procedure will not serve as an additional or substitute appeal process for hearing officer decisions, rules infraction board decisions or those issues or actions which already include an appeal mechanism beyond the institutional level or where a final decision has been rendered by Central Office staff."

Once Plaintiff Peace fulfilled the appeal process for the rules infraction board and was unconstititutionally, amd wontonly transferred to level three despite O.D.R.C. and M.T.C. violating policy and regulations to do so Peace fulfilled her obligation to exhaust all available remedies, but yet went further and carved out her own appeal process when no one would listen to her and while she was attacked and sexually assaulted by other inmates at N.E.O.C.C.

## ODRC Policy 5120-9-08 ) (1, 2, 3) & (P)

"Which states: (O) Appeal of R.I.B. decision- An inmate may appeal the decision of the R. I.B. panel by submitting the form designated for that purpose to the

managing officer or designee within fifteen calender day from the inmates receipt of the R.I.B. panel's disposition. The managing officer or designee shall review the R.I.B. determination to determine whether it was supported by sufficient evidence, that there was substantial compliance with applicable procedures, and that the disposition and any sanction imposed was approportionate to the rule violation.

(1) The appeal shall state the inmates allegations of procedural error and/or objections to the R.I.B. panels, determination of guilty or penalty imposed.

(2) The managing officer or designee may affirm or reverse the R.I.B. panels determination of guilt; and may approve, or modify the imposed penalty from among the penalties available to the R.I.B. panel. The managing officer or designee may also return the matter to the R.I.B. panel for reconsideration or rehearing to address procedural errors that may have occurred within the case or to consider additional evidence.

(3) The managing officer or designee shall decide the appeal within thirty calendar days of its receipt, and shall promptly notify the inmate of the appeal decision on a form designed for that purpose.

(P) Discretionary review: "The director or the director's disignee may review any R.I.B. decision, presents issues that may have significant impact on the operation of the department. This paragraph does not provide an additional appeal for the inmate above the appeal to the managing officer.

52). In this present case, I filed the appropriate forms. I exhausted all available remedies.

53).    Then I wrote to Annette Chambers Smith, Mark Stegemoller, David Kollar, Brian Wiltrup, Sheli Branch, N.E.O.C.C. institutional inspector Chris Lambert, Deputy Warden Hurst, Unit Mangment and Case Managers. I also gave copies to Regional director Mr. Bradley whom reviewed, agreed with my case and after I had been assaulted several times returned me to level 2

(12).

because the R.I.B. panels. decision was in error and not in line with the director's views on what needs to be done in O.D.R.C.

54). I filed the appropriate forms to appeal as stated on the decisions forms, I also filed another appeal to disagree with the control transfer which also ultimately over turned. I did all this to find a adequate and fair way to solve the problem.

## V. LEGAL CLAIMS

55). Plaintiff realleges and incorporates by reference paragraphs (1-55).

56). I was denied due process by an upward departure causing me to lose priveleges, monatary amounts, property, safety and security. I was assualted by several inmates at level 3 when I was not even suppose to be sent housed, incacerated in level 3 to start with.

57). I experienced sexual harassment, assualtive behaviors, as well as being attacked because I am transgender that is not attracted to other conventional men. I was made a target because I was there first of all, I am an attractive person with long brown hair, and have a womanly form to myself.

58). I experienced psychological damages, crying uncontrollably, fear for my safety and wonder who else will attack me. All of these issues are against the eighth amendment and my legal right to not be forced to experiance cruel unusal punishment, not to be sexually harassed, not be physically attacked and my human right to not be beaten and made to be a victim by other men stronger than myself.

59). Once I alerted the powers that be of what was taken place, of the violations perpetrated against me including providing proof I experienced deliberate indifference because I was left in level 3 in the hopes I would either stop complaining or worst.

(13).

60).    The plaintiff has no plain adequate or complete remedy at law to redress the wrongs described here in. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless the Court grants the declaratory and injunctive relief which plaintiff seeks.

61).    This Court has supplemental jurisdiction over plaintiffs state law claims under 28 U.S.C. §1367.

## VI. PRAYER FOR RELIEF

Wherefore, plaintiff respectfully prays that this Court enter judgment granting plaintiff:

62).    A declaration that the acts and omissions described herein violated plaintiffs rights under the constitution and laws of the United States.

63).    A preliminary and permanent injunction ordering defendants any employee, contractor, or persons named within these pages including but not limited to current incarceration at Pickaway Correctional Institution in Orient, Ohio, not allow close and personal friends Bobby Panning #A479-004 to experience retaliations, discrimination and harassment due to my filings and dealing with these courts.

64).    Compensatory damages in the amount of Three-hundred thousand dollars against each defendant, jointly and severally.

65).    Punitive damages in the amount of Three hundred thousand dollars against each defendant.

66).    A jury trial on all issues triable by jury.

67).    Plaintiff's Costs in this lawsuit.

68).    Any additional relief this Court deems just, proper and equitable.

Dated: 3-10-20

(14).

Dated: 3-6-20

Respectfully Submitted
Tara T. Peace 371-943

## VERIFICATION

I have read the foregoing complaint, and hereby verify that the matters alleged on information and except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Orient, Ohio on March 6th 2020

X _____
Tara Temperance Peace

(15).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

TARA T. PEACE,
    Plaintiff,

:  Civil Action:_____

:

Vs.

: DECLARATION OF TARA T. PEACE

Ohio Department of Rehabilitation
& Corrections, et al.
    Defendants.

:

---

1). I am the undersigned of this document to declare truth.

2). My legal name is Tara Temperance Peace.

3). I am currently incarcerated in: Pickaway Correctional Institution in Orient, Ohio.

4). This statement is a measure and caused by civil action I have brought against the defendants named in the Complaint.

5). Due to the fact that several of the defendants and/or all named may have financial holdings, assess accounts these accounts or financial assets liquid or solid should be placed in holding until such time as the Courts deem the responsibilities of the Defendants. The case is brought on by bad acts of the defendants both personally and professionally that could lead to one or more being held liable for personal bad acts that caused the plaintiff to suffer as a result.

6). The following is an explanation of the evidence presented and an attempt to guide the Courts to the places of interest to this cause.

Exhibit A: Conduct Report of plaintiff dated 3-10-19 shows plaintiff recieved a report for a rule 4 violation assault and rule 35 out of place from defendant S. Curry

Exhibit B: Conduct Report of Athony O. Ford depicting being charged for a rule 19 violation of fighting it also shows "retaliates by fighting back." From defendant S. Curry

Exhibit C: Shows that inmate Ford went to the rules infraction board R.I.B. before the plaintiff on 3-13-19. This person never

went to segregation for a violent ticket such as fighting and
was found guilty of the same charge.
It is unheard of for a violent inmate to be given "time on the
shelf", not to even go to segregation and to be found guilty of
the Conduct Report.

Exhibit D: Shows Plaintiff was found guilty after inmate Fords
guilty  verdict on 3-13-19, plaintiff was found guilty on 3-19-19
and it also shows the punishment she recieved for the same Conduct
Report, and disposition.

Exhibit E: Page 1 shows plaintiff has one (1) point and was sent
back to level 3, when the scale for a level increase is stated to
be "4 to 5" "Consider Security level increase" also shows Ms.Melinda
S. Taylor as the reviewer of this document and the review itself.
Page 3 shows N.C.C.C. or M.T.C. or ODRC requested an Over-ride
be make sure I was sent to level 3 with th signature of U.M.
S. Curry on 3-20-19. Page 3 also shows the Warden of N.C.C.C. or
M.T.C. Neil Turner Warden's designee signed and agreed to this
conspiracy to send plaintiff to level 3, where she was repeatedly
victimized. The rationale for the agreement was false as it's
already  been proven that both inmates were in a fight, mutal
combat, and not assault. Page 5 shows the Bureau of Classifications
headed by Brian Wiltrup, is also party to this conspiracy and agreed
by signature to return plaintiff to level 3.

Exhibit F: Shows plaintiff was returned to level 2, in only approx.
7 months later, which in itself is admission to guilt to the
conspiracy that sent plaintiff to level 3 and where plaintiff was
victimized, assaulted and tortured. Plaintiff scored a zero (0)
to return to level 2.
Page 2 shows plaintiff has no S.T.G. affiliation, has her GED and
only had the charges on her record from N.C.C2C. or M.T.C., O.D.R.C.
Plaintiff was returned to level 2 with the agreement of Director
Chambers-Smith through her designee Regional Director Charles
Bradley.
Page 3 shows the agreement and where to send plaintiff back to as
to what prison at level 2.

7).  The exhibits depicted also were signed and agreed to by the R.I.B.
Chairman he was also a part of the Conspiracy to send plaintiff
to level 3, he and U.M. S.Curry were the worst of the offenders
as the conspiracy originated with these two, and furthered by
the other defendants named or others not yet known. Officer Prichard
who was  responsible to follow the rules, regulations and policy
purposely and with malice sent plaintiff to level 3 to protect
offender Ford who had caused the fight to begin with by constant
harassment, spreading lies and trying to get the plaintiff injured.

8). Exhibits A - F show the crux of the Plaintiffs case. The individuals
The individuals responsible by signature or actually filing the
documents that caused injury to the plaintiff.

9). The items listed 1 - 9 and Exhibits A - F are furtherance of the
civil case and are true and accurate to the best of my abilities.

/Plaintiff
Tara T. Peace
Pax Vobiscum

# § 2921.44 Dereliction of duty.

(A) No law enforcement officer shall negligently do any of the following:
(1) Fail to serve a lawful warrant without delay;
(2) Fail to prevent or halt the commission of an offense or to apprehend an offender, when it is in the law enforcement officer's power to do so alone or with available assistance.
(B) No law enforcement, ministerial, or judicial officer shall negligently fail to perform a lawful duty in a criminal case or proceeding.
(C) No officer, having charge of a detention facility, shall negligently do any of the following:
(1) Allow the detention facility to become littered or unsanitary;
(2) Fail to provide persons confined in the detention facility with adequate food, clothing, bedding, shelter, and medical attention;
(3) Fail to control an unruly prisoner, or to prevent intimidation of or physical harm to a prisoner by another;
(4) Allow a prisoner to escape;
(5) Fail to observe any lawful and reasonable regulation for the management of the detention facility.
(D) No public official of the state shall recklessly create a deficiency, incur a liability, or expend a greater sum than is appropriated by the general assembly for the use in any one year of the department, agency, or institution of the state with which the public official is connected.
(E) No public servant shall recklessly fail to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly do any act expressly forbidden by law with respect to the public servant's office.
(F) Whoever violates this section is guilty of dereliction of duty, a misdemeanor of the second degree.
(G) Except as otherwise provided by law, a public servant who is a county treasurer; county auditor; township fiscal officer; city auditor; city treasurer; village fiscal officer; village clerk-treasurer; village clerk; in the case of a municipal corporation having a charter that designates an officer who, by virtue of the charter, has duties and functions similar to those of the city or village officers referred to in this section, the officer so designated by the charter; school district treasurer; fiscal officer of a community school established under Chapter 3314. of the Revised Code; treasurer of a science, technology, engineering, and mathematics school established under Chapter 3326. of the Revised Code; or fiscal officer of a college-preparatory boarding school established under Chapter 3328. of the Revised Code and is convicted of or pleads guilty to dereliction of duty is disqualified from holding any public office, employment, or position of trust in this state for four years following the date of conviction or of entry of the plea, and is not entitled to hold any public office until any repayment or restitution required by the court is satisfied.
(H) As used in this section, "public servant" includes the following:
(1) An officer or employee of a contractor as defined in section 9.08 of the Revised Code;
(2) A fiscal officer employed by the operator of a community school established under Chapter 3314. of the Revised Code or by the operator of a college-preparatory boarding school established under Chapter 3328. of the Revised Code.

# § 2921.45 Interfering with civil rights.

(A) No public servant, under color of his office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.
(B) Whoever violates this section is guilty of interfering with civil rights, a misdemeanor of the first degree.

# Amendment 6 Rights of the accused.

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

# Amendment 8 Bail—Punishment.

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

# Amendment 14

**Sec. 1. [Citizens of the United States.]** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

# § 2 Right to alter, reform, or abolish government, and repeal special privileges.

All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly.

# Conduct Report

EXHIBIT
A

| | | Institution: NCCI | NCCI-19-002247 |
|---|---|---|---|

| Name: PEACE, TODD E | | Number: A371943 | Lock: MA/B/0035 |
|---|---|---|---|

| Date/Offense: 03/10/2019 | Time/Offense: 12:53 PM | Location: THIRD ISLE MARION A SIDE | |
|---|---|---|---|

Rule(s) Violated:  04,35
Causing, or attempting to cause, physical harm to another; Being out of place

**Supporting Facts (Describe what occurred and how the inmate violated the rule[s]):**

After reviewing camera footage, Inmate Peace A371943 can be seen on camera on Sunday, March 10, 2019 at approximately 12:53 p.m. walking off the second isle of Marion A side towards the back wall in an aggressive manner towards cubicle MA/A/91, Inmate Ford's (A650592)cubicle.  Inmate Ford can be seen sitting on his bunk when Inmate Peace A371943 enters aggressively and begins throwing closed fist punches to the head and body areas of Inmate Ford.  Inmate Ford does stand and begins to defend himself by trying to push Inmate Peace away and Ford at that time retaliates by fighting back.  I, am therefore, charging Inmate Peace with a Rule 4 Assault and Rule 35, Out of Place.  Camera footage has been sent to RIB through email.

(Use Conduct Report Supplement sheet, if needed)

As the Charging Official, do you wish to have input into the disciplinary proceedings?  ☐ Yes  ☑ No

| Printed Name: CURRY, S. | Signature: S. Curry | |
|---|---|---|
| Shift: 1ST | Days Off: SAT/SUN | Date: 03/11/2019 |

A copy of this conduct report was served upon the above-named inmate on: _____ March, 14 _____ 20 __19__, at 06:12 PM.

Staff Signature: _____

I acknowledge receipt of the conduct report on the above stated date and time:

| Inmate Signature: | | Number: A371943 |
|---|---|---|

DRC4018

# Conduct Report

EXHIBIT B

| Name: FORD, ANTONY O | Institution: NCCI | | NCCI-19-002248 |
|---|---|---|---|
| | Number: A650592 | | Lock: MA/A/0091 |

| Date/Offense: 03/10/2019 | Time/Offense: 12:53 PM | Location: MARION A SIDE THIRD ISLE |
|---|---|---|

| Rule(s) Violated: 19 |
|---|
| Fighting - with or without weapons, including instigation of, or perpetuating fighting |

## Supporting Facts (Describe what occurred and how the inmate violated the rule[s]):

After reviewing camera footage, Inmate Peace A371943 can be seen on camera on Sunday, March 10, 2019 at approximately 12:53 p.m. walking off the second isle of Marion A side towards the back wall in an aggressive manner towards cubicle MA/A/91, Inmate Ford's (A650592)cubicle. Inmate Ford can be seen sitting on his bunk when Inmate Peace A371943 enters aggressively and begins throwing closed fist punches to the head and body areas of Inmate Ford. Inmate Ford does stand and begins to defend himself by trying to push Inmate Peace away and Ford at that time retaliates by fighting back. Both inmates can then be seen fighting on the back wall of Marion A side. I, am therefore, charging Inmate Ford with a Rule 19, fighting. Camera footage has been sent to RIB through email.

(Use Conduct Report Supplement sheet, if needed)

As the Charging Official, do you wish to have input into the disciplinary proceedings?  ☐ Yes  ☑ No

| Printed Name: CURRY, S. | Signature: S. Curry |
|---|---|
| Shift: 1ST | Days Off: SAT/SUN | Date: 03/11/2019 |

A copy of this conduct report was served upon the above-named inmate on: _____ March, 12 _____ 20 _19_, at 09:37 AM.

Staff Signature: ○ Nm

I acknowledge receipt of the conduct report on the above stated date and time:

| Inmate Signature: | Number: A650592 |
|---|---|

## Disposition of the Rules Infraction Board

EXHIBIT C

| Institution: | | | |
| --- | --- | --- | --- |
| NCCI | | RIB Case Number: | NCCI-19-002248 |
| Inmate Name: FORD, ANTONY O | | Number: | A650592 |
| Date of Hearing: 03/13/2019 | | Time: | 10:15 AM |

**Inmate Plea:**

☑ GUILTY
☐ NOT GUILTY

Rule: __19__

State the facts that explain the board's decision:
This panel believes that the inmate was guilty of fighting with or without weapons, including instigation of, or perpetuating fighting, rule violation 19

Particular evidence or statements relied on:
Conduct report / Inmate statement

Did the inmate offer any defense? ☑ Yes ☐ No
Did the Board believe the inmate's defense? ☑ Yes ☐ No   Why? Conduct Report supports the charge

Did the board rely on any confidential statement(s) ☐ Yes ☑ No
Did the board determine the informant(s) to be credible? ☐ Yes ☑ No
Disposition of the Hearing Officer is: ☑ Affirmed
☐ Returned for reconsideration

Decision: Based on the above stated facts the Board believes that:

Inmate __FORD, ANTONY O__ violated rule(s)
Inmate __FORD, ANTONY O__ did not violate rule(s)   Rule: __19__

Therefore, the RIB Officer imposes the following disposition: __Other__

☐ Check "Stacked" if you wish to stack housing record, otherwise housing record will be combined with other housing records.
☐ RIB recommends a Security Review be conducted.

Identify the disposition imposed and the reasons for the action taken:
Inmate is in college full time with no serious conduct reports within the last 12 months. inmate is also a porter seven for the unit. inmate is also involved in inmate programing. 15 days TPU, recommended suspended, to begin on 03-11-19 to end 09-07-19. Recommend a local separation from inmate: Peace 371943

Appeal form given to inmate? ☐ Yes ☑ No
Does this offense qualify for SMP? ☐ Yes ☑ No

| Signature RIB Chairperson: _Michael D_ | | Date: 03/13/2019 |
| --- | --- | --- |

**Notice To Inmate:** *You may appeal this decision to the Warden.*
*The appeal must be submitted using the provided form DRC4027, within 15 days of receiving this disposition.*

**Acknowledgement of Receipt:**

| Inmate Signature: _Antony Ford_ | Date: 03/13/2019 | Time: 10:22 AM |
| --- | --- | --- |

DRC4024 (Rev. 01/19) DISTRIBUTION:   WHITE - RIB   CANARY - Unit File   PINK - RIB Board   GOLDENROD - Inmate

Results Of
Warden's Administrative Review

| | RIB Case Number: NCCI-19-002248 |
| --- | --- |

Upon reviewing the proceeding and the disposition of the Rules Infraction Board, I have determined that the board's decision should be:

☑ Affirmed

☐ Modified as indicated below

☐ Reversed

☐ Returned for reconsideration

☐    Warden recommends a Security Review be conducted.

NOTES:

You have been validly charged with the proper rule infraction(s). There is sufficient evidence to support the charge(s). The penalty imposed is appropriate.

*Note: This decision is the result of the automatic administrative review of RIB decisions provided for in 512-9-08(M)*

| Warden or Designee's Signature: *Mary Van Siche K* | Date: |
|---|---|
| | 03/15/2019 |

DRC4024

## Disposition of the Rules Infraction Board



EXHIBIT
D

| Institution: | | RIB Case Number: | |
|---|---|---|---|
| | NCCI | | NCCI-19-002247 |
| Inmate Name: | | Number: | |
| | PEACE, TODD E | | A371943 |
| Date of Hearing: | | Time: | |
| | 03/19/2019 | | 12:30 PM |

**Inmate Plea:**

☑ GUILTY                 Rule: **35**

☑ NOT GUILTY          Rule: **04**

State the facts that explain the board's decision:
This panel believes that the inmate was guilty of rule 04,35 Causing, or attempting to cause, physical harm to another; Being out of place

Particular evidence or statements relied on:
Conduct report / Inmate statement / Camera review

Did the inmate offer any defense?              ☑ Yes ☐ No
Did the Board believe the inmate's defense?   ☑ Yes ☐ No        Why? **Conduct Report supports the charge**

Did the board rely on any confidential statement(s)    ☐ Yes ☑ No
Did the board determine the informant(s) to be credible?   ☐ Yes ☑ No
Disposition of the Hearing Officer is:                   ☑ Affirmed
                                                         ☐ Returned for reconsideration

Decision: Based on the above stated facts the Board believes that:

Inmate **PEACE, TODD E** _____ violated rule(s)              Rule: **04**      Rule: **35**

Inmate **PEACE, TODD E** _____ did not violate rule(s)

Therefore, the RIB Officer imposes the following disposition:   **RH**

☑  Check "Stacked" if you wish to stack housing record, otherwise housing record will be combined with other housing records.

Number of RH days imposed by RIB:  **29**

☑  RIB recommends a Security Review be conducted.

Identify the disposition imposed and the reasons for the action taken:
2nd rule 04 within 12 months; Recommend level raise/ transfer. Recommend a local separation from inmate: Ford's (A650592), No of Days in RH: 29, Serve Order requested: Stack

Appeal form given to inmate?                         ☐ Yes ☑ No
Does this offense qualify for SMP?  ☐ Yes ☑ No

| Signature RIB Chairperson: | Date: |
|---|---|
| | 03/19/2019 |

***Notice To Inmate:*** *You may appeal this decision to the Warden.*
*The appeal must be submitted using the provided form DRC4027, within 15 days of receiving this disposition.*

**Acknowledgement of Receipt:**

| Inmate Signature: | Date: | Time: |
|---|---|---|
| | 03/19/2019 | 12:49 PM |

DRC4024 (Rev. 01/19) DISTRIBUTION:   WHITE - RIB   CANARY - Unit File   PINK - RIB Board   GOLDENROD - Inmate

Results Of
Warden's Administrative Review

| RIB Case Number: |
|---|
| NCCI-19-002247 |

Upon reviewing the proceeding and the disposition of the Rules Infraction Board, I have determined that the board's decision should be:

☑ Affirmed                            ☐ Reversed
☐ Modified as indicated below         ☐ Returned for reconsideration

☑     Warden recommends a Security Review be conducted.
NOTES:
Your RIB documents have been reviewed. You were validly charged with the proper rule infraction(s). There is sufficient evidence to support the charge (s).

*Note: This decision is the result of the automatic administrative review of RIB decisions provided for in 512-9-08(M)*

| Warden or Designee's Signature: *Mary Van Dicke K* | Date: |
|---|---|
| | 03/26/2019 |

DRC2098(Rev. 03/12)

**Male Security Review (page 1)**
**Department of Rehabilitation and Correction**
**State of Ohio**

EXHIBIT
E

| | 03/20/2019 |
|---|---|
| | MELINDA S TAYLOR |
| ☐ Annual Review  ☑ Special Review | |
| Institution: | NCCI |

Offender Number: A371943
Date of Birth: 03/29/1976      Race: WHITE

Name: PEACE E, TODD
Hispanic:

Admission Date: 02/12/1999
Present Security Level: 2
Previous Offender Numbers:

Earliest Possible Release: Stated Term: 01/20/2030
Date of Last Security Level Review: 01/18/2019

Most Serious Current Crime: AGG MURDER
Other Current Crime(s): AGG MURDER, AGG ARSON, TAMPER W/EVIDENCE

Felony Level of Most Serious Current Crime: AM

---

**SECTION A: INSTRUMENT SCORING**

| | WEIGHT | SCORE |
|---|---|---|
| 1. Frequency of Guilty RIB Offenses (in the last 12 months) | | |
| None | | |
| 1 Offense | 0 | |
| 2 to 3 Offenses | 2 | 3 |
| 4 or More Offenses | 3 | |
| | 4 | |
| 2. Local Control or Level 4B Status (in the last 12 months) | | |
| No LC or 4B Status | 0 | |
| LC or 4B Status | 1 | 0 |
| 3. Current Active or Disruptive STG Member | | |
| No Active or Disruptive STG Member | 0 | |
| Active or Disruptive STG Member | 1 | 0 |
| 4. Educational Attainment (pre-prison/current) | | |
| High School Diploma, GED, or Higher Education | -1 | |
| Less Than High School Equivalency | 0 | -1 |
| 5. Age at This Review | | |
| Age 40 or Older | -1 | |
| Age 39 or Younger | 0 | -1 |
| **TOTAL SCORE:** | | 1 |

| -2 to -1 Points | 0 to 3 Points | 4 to 6 Points |
|---|---|---|
| Consider Security Level Decrease | Consider Present Security Level | Consider Security Level Increase |

Notes:
Age 42, Has GED, 3 RIB

DRC2098 (Rev. 03/12)

Male Security Review (page 2)

## SECTION B: OVERRIDES AND RECOMMENDATIONS

| Score Indicates Considering Security Level Decrease (-2 to -1) | Score Indicates Considering Present Security Level (0 to 3) | Score Indicates Considering Security Level Increase (4 to 6) |
|---|---|---|
| ☐ Agree: Decrease One Level | ☐ Agree: Continue Present Level | ☐ Agree: Increase One Level |
| ☐ Disagree: Continue Present Level | ☐ Disagree: Decrease One Level | ☐ Disagree: Continue Present Level |
| | ☑ Disagree: Increase One Level | |

☑ Yes ☐ No    Override of Designation Score is Recommended

Please select all which apply to this offender for the purposes of overriding:

**Non-Discretionary Overrides for Double Perimeter Fence Only**

☐ Sex offenders
☐ Kidnapping or abduction offenders
☐ High notoriety case offender
☐ Current conviction of aggravated murder or murder
☐ Any felony for causing the death of a law enforcement officer or causing the death of another person while incarcerated
☐ Former death row or life without parole offenders
☐ Documented escape from confinement
☐ Level 2 security offenders serving an indefinite sentence for an F1 or F2 that has not had a statutory first hearing

**Discretionary Overrides**

☐ Time left to serve
☐ Severity of current offense
☐ Extensive criminal history
☐ Documented escape from supervision
☐ Documented escape with unknown details
☐ Felony detainer
☐ Program Compliance
☐ Program Non-Compliance
☐ Positive prison adjustment
☑ Negative prison adjustment
☐ Score indicates increase, but offender is manageable at current security level
☐ Involvement in Disruptive STG incident
☐ Involvement in Active STG incident
☐ Other (please specify):
☐ Other (please specify):

**Recommended Placement**

| ☐ Level 1 | ☑ Level 3 | ☐ Referral for Level 5 Hearing (see 53-CLS-04) |
|---|---|---|
| ☐ Level 2 | ☐ Level 4 | |

| Chairperson (Signature): *S. Curry* | Date: 03/20/2019 |
|---|---|

## SECTION C: WARDEN OR WARDEN'S DESIGNEE

Warden's Action:    ☑ Approve  ☐ Disapprove

Warden's Rationale:    Assaulted another inmate

**Warden's Recommended Placement**

| ☐ Level 1 | ☑ Level 3 | ☐ Referral for Level 5 Hearing (see 53-CLS-04) |
|---|---|---|
| ☐ Level 2 | ☐ Level 4 | |

| Warden (Signature): *Neil Turner* | Date: 03/22/2019 |
|---|---|

☑ Yes ☐ No    Does this placement require a transfer?

☐ Yes ☑ No    Is this offender in PC?

Mental Health Level: C1
Medical Level: 2
Special Placement Needs:

☐ Yes ☑ Is this an Interstate Offender?
No

☐ Yes ☑ Transfer packet sent to Bureau of
No          Classification?

DRC2098 (Rev. 03/12)

DRC2098(Rev. 03/12)

Male Security Review (page 3)

| SECTION D: BUREAU OF CLASSIFICATION | | | |
|---|---|---|---|
| Bureau of Classification Action: | ☑ Approve  ☐ Disapprove | | |
| Bureau of Classification Rationale: | Assaulted another inmate who was lying on his bed. | | |
| **Final Placement** | | | |
| ☐ LEVEL 1 | ☐ LEVEL 2 | ☑ LEVEL 3 | ☐ 3R |
| ☐ LEVEL 4 | ☐ E | ☐ EN | ☐ ET |
| ☐ EM | ☐ 0D | | |

Institutional Placement:  NEOCC

Signature: *Vannie Hupka*    Date: 03/25/2019

DRC2098 (Rev. 03/12)

**Male Security Review (page 1)**
**Department of Rehabilitation and Correction**
**State of Ohio**

| | |
|---|---|
| Date of Review: | 09/19/2019 |
| Reviewer: | AMANDA M MADELINE |
| | ☐ Annual Review  ☑ Special Review |
| Institution: | NEOCC |

Offender Number: A371943
Date of Birth: 03/29/1976          Race: WHITE

Name: PEACE E, TODD
Hispanic:

Admission Date: 02/12/1999
Present Security Level: 3
Previous Offender Numbers:

Earliest Possible Release: Stated Term: 01/20/2030
Date of Last Security Level Review: 03/25/2019

Most Serious Current Crime: AGG MURDER
Other Current Crime(s): AGG MURDER, AGG ARSON, TAMPER W/EVIDENCE

Felony Level of Most Serious Current Crime: AM

| SECTION A: INSTRUMENT SCORING | WEIGHT | SCORE |
|---|---|---|
| 1. Frequency of Guilty RIB Offenses (in the last 12 months) | | |
| None | 0 | |
| 1 Offense | 2 | |
| 2 to 3 Offenses | 3 | 2 |
| 4 or More Offenses | 4 | |
| 2. Local Control or Level 4B Status (in the last 12 months) | | |
| No LC or 4B Status | 0 | |
| LC or 4B Status | 1 | 0 |
| 3. Current Active or Disruptive STG Member | | |
| No Active or Disruptive STG Member | 0 | |
| Active or Disruptive STG Member | 1 | 0 |
| 4. Educational Attainment (pre-prison/current) | | |
| High School Diploma, GED, or Higher Education | -1 | |
| Less Than High School Equivalency | 0 | -1 |
| 5. Age at This Review | | |
| Age 40 or Older | -1 | |
| Age 39 or Younger | 0 | -1 |
| TOTAL SCORE: | | 0 |

| -2 to -1 Points | 0 to 3 Points | 4 to 6 Points |
|---|---|---|
| **Consider Security Level Decrease** | **Consider Present Security Level** | **Consider Security Level Increase** |



EXHIBIT
F

Notes:
Age at review 43 with expected release 11/20/2030. No STG Affiliation and GED obtained. RIB in the last 12 months 3/10/19 R4/35.
Recommending level 2 placement per Regional C.Bradley.

DRC2098 (Rev. 03/12)

Male Security Review (page 2)

## SECTION B: OVERRIDES AND RECOMMENDATIONS

**Score Indicates Considering Security Level Decrease (-2 to -1)**
- ☐ Agree: Decrease One Level
- ☐ Disagree: Continue Present Level

**Score Indicates Considering Present Security Level (0 to 3)**
- ☐ Agree: Continue Present Level
- ☑ Disagree: Decrease One Level
- ☐ Disagree: Increase One Level

**Score Indicates Considering Security Level Increase (4 to 6)**
- ☐ Agree: Increase One Level
- ☐ Disagree: Continue Present Level

☐ Yes  ☐ No   Override of Designation Score is Recommended

Please select all which apply to this offender for the purposes of overriding:

**Non-Discretionary Overrides for Double Perimeter Fence Only**
- ☐ Sex offenders
- ☐ Kidnapping or abduction offenders
- ☐ High notoriety case offender
- ☐ Current conviction of aggravated murder or murder
- ☐ Any felony for causing the death of a law enforcement officer or causing the death of another person while incarcerated
- ☐ Former death row or life without parole offenders
- ☐ Documented escape from confinement
- ☐ Level 2 security offenders serving an indefinite sentence for an F1 or F2 that has not had a statutory first hearing

**Discretionary Overrides**
- ☐ Time left to serve
- ☐ Severity of current offense
- ☐ Extensive criminal history
- ☐ Documented escape from supervision
- ☐ Documented escape with unknown details
- ☐ Felony detainer
- ☐ Program Compliance
- ☐ Program Non-Compliance
- ☐ Positive prison adjustment
- ☐ Negative prison adjustment
- ☐ Score indicates increase, but offender is manageable at current security level
- ☐ Involvement in Disruptive STG incident
- ☐ Involvement in Active STG incident
- ☐ Other (please specify):
- ☐ Other (please specify):

**Recommended Placement**
- ☐ Level 1
- ☑ Level 2
- ☐ Level 3
- ☐ Level 4
- ☐ Referral for Level 5 Hearing (see 53-CLS-04)

Chairperson (Signature): _____  Date: 09/19/2019

## SECTION C: WARDEN OR WARDEN'S DESIGNEE

Warden's Action: ☑ Approve  ☐ Disapprove

Warden's Rationale: Approved - PCI

**Warden's Recommended Placement**
- ☐ Level 1
- ☑ Level 2
- ☐ Level 3
- ☐ Level 4
- ☐ Referral for Level 5 Hearing (see 53-CLS-04)

Warden (Signature): A. Milhoan   Date: 09/20/2019

☐ Yes ☑ No   Does this placement require a transfer?

☐ Yes ☑ No   Is this offender in PC?

Mental Health Level: C1
Medical Level: 2
Special Placement Needs:

☐ Yes ☑   Is this an Interstate Offender?
No

☐ Yes ☑   Transfer packet sent to Bureau of
No              Classification?

DRC2098 (Rev. 03/12)

Male Security Review (page 3)

---

**SECTION D: BUREAU OF CLASSIFICATION**

Bureau of Classification
Action:  ☐ Approve  ☐ Disapprove

Bureau of Classification
Rationale:

**Final Placement**

☐ LEVEL 1     ☐ LEVEL 2     ☐ LEVEL 3     ☐ 3R

☐ LEVEL 4     ☐ E         ☐ EN       ☐ ET

☐ EM       ☐ 0D

Institutional Placement:

| Signature: | Date: |
|---|---|
| | |

DRC2098 (Rev. 03/12)