PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TARA T. PEACE, aka Todd E. Peace, | ) |
| | ) CASE NO. 4:20CV0713 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| ANNETTE M. CHAMBERS-SMITH, | ) |
| DIRECTOR OF THE OHIO | ) |
| DEPARTMENT OF REHABILITATION & | ) |
| CORRECTION, *et al.*, | ) |
| | ) **MEMORANDUM OF OPINION** |
| Defendants. | ) **AND ORDER** |

*Pro Se* Plaintiff Tara T. Peace, aka Todd E. Peace[1] filed this action under 42 U.S.C. § 1983 against Annette M. Chambers-Smith, Director of the Ohio Department of Rehabilitation & Correction ("ODRC"); ODRC Bureau of Classification Chief Brian Wiltrup; Management and Training Corporation; Neil Turner, Warden of the North Central Correctional Complex ("NCCC"); NCCC Rules Infraction Board ("RIB") Chairman John Prichard; NCCC Unit Manager S. Curry; NCCC Case Manager Melinda Taylor; and, NCCC Deputy Warden Jane Doe. In the Complaint (ECF No. 4), Plaintiff alleges she was denied due process and subjected to cruel and unusual punishment in connection to a disciplinary sanction that increased her security

---

[1] Plaintiff claimed in a prior action that he "presents as a feminine acting male" with the "speech patterns, body language and hand gestures of a woman." Plaintiff also stated he is homosexual, considered a "Queen," and answers to the name "Tara." *Peace v. Mohr*, No. 4:12CV2283, slip. op. at 1-2 (N.D. Ohio April 29, 2013) (Pearson, J.) (ECF No. 7 in No. 4:12CV2283). Peace refers to herself using feminine pronouns.

(4:20CV0713)

classification rating and resulted in her transfer to another security level prison. She seeks monetary relief.

## I. Background

Plaintiff's claims stem from a prison disciplinary proceeding, and her objection to the sanction imposed. She was housed at NCCC in March 2019 when the incident in question occurred. Plaintiff contends Inmate Ford had been treating her disrespectfully, calling her derogatory names and insinuating to other inmates that she was a "snitch." Peace states she retaliated against Ford by approaching him in his sleeping area and repeatedly punching him. Ford responded to the attack by returning punches. Plaintiff states that she left the area when, under unwritten prison law, the point had been made clear that she would not tolerate disrespect. Both inmates were charged with conduct violations. Peace, as the aggressor, was charged with assault. Ford was charged with fighting. Both were found guilty at a RIB hearing. Ford, who had an otherwise clean conduct record, received a sanction of 15 days in segregation, suspended, and an order of separation from Plaintiff. Plaintiff had two Rule 4 assault conduct violations in 12 months. Therefore, she was sanctioned with restricted housing, an increase in her security classification rating from Level 2 to Level 3, and transfer to a higher security level correctional institution.

Plaintiff contends the charges and penalties imposed on her were disproportionate to those imposed upon Inmate Ford. She also alleges that one other prior conduct violation for assault should not be enough to increase a security classification rating  it should require four to six prior violations. Plaintiff claims she was denied due process.

2

(4:20CV0713)

Plaintiff was transferred to the Northeast Ohio Correctional Center ("NEOCC") in April 2019. She indicates she was sexually harassed and assaulted by inmates at that prison. Plaintiff contends this violated her Eighth Amendment rights. In the meantime, she appealed her conduct rule violation sanction through the ODRC. The Regional Director reviewed the case and reversed the security classification rating increase. In October 2019, Plaintiff's security classification rating was restored to Level 2 and she was transferred to the Pickaway Correctional Institution.

## II. Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief may be granted or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). *See also Lawler*, 898 F.2d at 1199.

When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a

(4:20CV0713)

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.* (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. Law and Analysis

**A. Parties**

As an initial matter, the ODRC is an agency of the State of Ohio and therefore is immune from suits for damages. The Eleventh Amendment is an absolute bar to the imposition of

4

(4:20CV0713)

liability upon state agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005).

Plaintiff also names Management and Training Corporation as a Defendant in this action. NCCC is privately owned and operated by Management and Training Corporation. It is named as a Defendant because it employs individuals who are also named as Defendants in this action. Section 1983, however, does not permit a plaintiff to sue a defendant for the actions of others on the theory of *respondeat superior* liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978). When the defendant is a corporate entity, a Plaintiff may only hold it liable under § 1983 for the entity's own wrongdoing. *Id.* It cannot be held liable solely on the actions of its employees. *Id.* An entity violates § 1983 when its official policy or custom actually serves to deprive an individual of her constitutional rights. *Id.* Here, Plaintiff does not allege an official policy or custom of Defendant Management and Training Corporation caused a violation of her constitutional rights. Instead, her allegations are directed at the decisions and actions of individual officers and employees of Management and Training Corporation. That is not sufficient to state a claim for relief against Defendant Management and Training Corporation.

### B. Due Process

Plaintiff first contends she was denied due process before having her security classification rating increased and being transferred to another prison. The Fourteenth Amendment provides, in relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars

5

(4:20CV0713)

"certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only deprivations of constitutionally protected interests that are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a protected liberty or property interest. It simply requires that the government provide notice of the reason for the deprivation and a meaningful opportunity to be heard before its makes such a decision. *Howard v. Grinage,* 82 F.3d 1343, 1349-53 (6th Cir. 1996); *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983). The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. *Howard*, 82 F.3d at 1349-53. Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient. *Id.* at 1350. Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

(4:20CV0713)

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. See *Daniels*, 474 U.S. at 331. Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. *Id.* It serves as a check on legislation or official misconduct that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights. *Howard,* 82 F.3d at 1349. It also serves as a "limitation on official misconduct, which although not infringing on a fundamental right, is so literally 'conscience shocking,' . . . as to rise to the level" of a constitutional violation. *Id.*

### 1. Procedural Due Process

The first step in a procedural due process inquiry is to determine whether Plaintiff was deprived of a protected liberty or property interest. Prisoners have narrower liberty and property interests than other citizens as "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (brackets in original). The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "[T]he Constitution

7

(4:20CV0713)

itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221. Only those sanctions which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" will implicate the Due Process Clause. *Sandin*, 515 U.S. at 484.

Plaintiff claims she was sanctioned with an increase in her security classification rating and transfer to a higher security level prison. In general, prisoners do not have a protected liberty or property interest in being incarcerated in a particular prison or to be held under a specific security classification rating. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1 (6th Cir. Dec. 23, 1997). The only exception to that rule is when the inmate has been reclassified to supermax prison which imposes significant restrictions on movement beyond what is typically imposed in a maximum security prison. *Wilkinson*, 545 U.S. at 224.

Plaintiff was not transferred to the Ohio State Penitentiary, Ohio's supermax facility, nor did she have her security classification rating raised to that degree. Instead, her security classification was raised from a Level 2 to a Level 3, and she was housed in the NEOCC.[2] NEOCC does not impose restrictions on its inmates that are atypical or significant hardships in

---

[2] The ODRC describes Level 2 in its 3-Tier prison system as requiring more supervision than Level 1 inmates, but still allowing inmates to have "greater autonomy and freedom of movement during the day to encourage pro-social behavior." Privileges are greater than those allowed to Level 3 inmates and inmates "may be eligible for Reintegration Units." Level 3 provides stricter security. Inmates are still "considered General Population, but [it] is designed for inmates who are more likely to, or have previously engage(d), in disruptive prison behavior." *See* https://drc.ohio.gov/policies/classification (last visited Dec. 31, 2020).

(4:20CV0713)

relation to ordinary prison life. Therefore, Plaintiff does not allege a deprivation of an interest protected by the Due Process Clause.

Moreover, even if Plaintiff had alleged she was deprived of a protected liberty or property interest, Plaintiff has not alleged facts suggesting the pre-deprivation disciplinary hearing she received did not satisfy the requirements of due process. The Court's ability to review prison disciplinary proceedings is limited. District courts have no authority to review a disciplinary committee's resolution of factual disputes or to make a redetermination of an inmate's innocence or guilt. *Superintendent, Mass. Corr. Inst., Walpole, v. Hill*, 472 U.S. 445, 455 (1985). The only question for the Court to determine is whether the hearing complied with the basic requirements needed to satisfy due process.

The standard is not a difficult one to meet. To comply with the requirements of the Due Process Clause, prison officials need only provide a prisoner facing loss of a constitutionally protected liberty or property interest with: (1) a written notice of the charges at least 24 hours prior to any hearing; (2) an opportunity to call witnesses and present documentary evidence in her defense when permitting her to do so will not be unduly hazardous to institutional safety or correctional goals; and, (3) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. *Id.* at 569-70.

Moreover, due process requires only that disciplinary findings resulting in the loss of a constitutionally protected interest be supported by "some evidence" in the record. *Hill*, 472 U.S.

9

(4:20CV0713)

at 454-56.  This standard is satisfied when "there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Id.  The hearing officer is not required to base findings on overwhelming or irrefutable proof of guilt.  Even when the evidence is contradictory or partially exculpatory, a hearing officer may base a finding of guilt on only "some evidence" that indicates the prisoner is guilty.  Id. at 457.

In this case, although Plaintiff attempts to characterize her claim as a denial of due process, she simply attacks the result of the disciplinary hearing and the sanction imposed. Plaintiff does not complain about the hearing process, nor does she suggest she was denied sufficient notice of the charges.  In addition, there was some evidence to support the finding of guilt.  Plaintiff does not deny that she attacked Inmate Ford in his sleeping area.  The RIB Chairperson also had a video of the incident, which supports Plaintiff's description of the events that led to the charges.  Thus, there is no suggestion that Plaintiff was denied a hearing that comports to the requirements of due process.

### 2. Substantive Due Process

Furthermore, Plaintiff's substantive due process rights were not violated by Defendants. Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right.  Mertik v. Blalock, 983 F.2d 1353, 1367 (6th Cir. 1993).  In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shocks the conscience."  See United States v. Salerno, 481 U.S. 739, 746 (1987).  These actions are unconstitutional regardless of the procedural protections provided.  Parate v. Isibor, 868 F.2d 821, 832 (6th Cir. 1989).  A citizen, however, does not suffer a constitutional deprivation every

(4:20CV0713)

time she is subjected to some form of harassment by a government agent. *Id.* at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id.*

Plaintiff does not allege facts suggesting she was deprived of a fundamental right. Her substantive due process claim, therefore, would have to be based on conduct alleged to be so severe that it shocks the conscience. Plaintiff does not allege facts suggesting that any part of the disciplinary hearing process itself was so egregious that it transcended ordinary tort law and rose to a constitutional level. She does allege instances of sexual harassment and assault by other inmates that occurred at NEOCC after her transfer. None of Defendants, however, is associated directly with NEOCC. They are all employed by either Management and Training Corporation or work for the ODRC central office. Thus, Plaintiff has not alleged facts to suggest her substantive due process rights were violated by the named Defendants.

**C. Eighth Amendment**

Finally, Plaintiff asserts an Eighth Amendment claim for the assaults and sexual harassment by inmates at NEOCC after her transfer there from NCCC. To state a claim for relief under the Eighth Amendment, the inmate must show (1) that she was incarcerated under conditions which pose a serious risk of harm and (2) that the defendant personally acted with a sufficiently culpable state of mind with regard to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Court need not decide whether the conditions Plaintiff found at NEOCC were sufficiently serious to meet the objective standard of the Eighth

(4:20CV0713)

Amendment because none of Defendants are at that institution. Plaintiff attempts to tie them in by suggesting that their decision to raise her security classification rating and transfer her to another prison placed her in close proximity with the prisoners who would harass her. The named Defendants, however, were not in a position to know which NEOCC inmates would pose a risk to Plaintiff's safety and were not in a position to assign her to an appropriate cell to protect her. Raising her security classification rating and transferring her from one institution to another, without more, is also not enough to satisfy the subjective component of an Eighth Amendment claim. Therefore, Plaintiff's Eighth Amendment claim is dismissed.

### IV. Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

| | |
|---|---|
| December 31, 2020 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |